IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

TYLER HOWARD GRAENING

    Plaintiff,

v.                                           CIVIL ACTION NO. 1:20-00400

WEXFORD HEALTH SERVICES, et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the motion to dismiss of defendants Dr. Servillano Garcia,[1] Tara Morgan, and Wexford Health Services, Inc. (ECF No. 13.)  For the reasons that follow, the court will grant the motion in part.

## I.  Background

Plaintiff, a state prisoner, commenced this § 1983 action on June 11, 2020, against several defendants, including Wexford Health Sources ("Wexford"), Dr. Servillano Garcia ("Dr. Garcia"), and Tara Morgan ("Ms. Morgan") (collectively, "defendants").  He alleges that defendants have been deliberately indifferent to his medical needs in violation of

---

[1] The court notes that because the complaint names "Dr. Oscar Garcia," this is the name on the docket.  The briefing, however, refers to Dr. Servillano Garcia without noting that the name on the docket should be corrected.  The court will assume that Dr. Servillano Garcia is the same person as the Dr. Oscar Garcia named in the complaint.

the Eighth Amendment.  Specifically, he says that defendants refused to provide needed medical care to diagnose and treat "pain in his ear, ringing, vertigo, and hearing loss," which began in September 2019.  (ECF No. 3, at 3.)

He says that when his symptoms became more severe despite Dr. Garcia's prescription of antibiotics and vertigo medicine, he asked to see an ear, nose, and throat specialist ("ENT"). The attending nurse, Randall New ("New"), told him that Wexford was not approving such requests "unless the inmate was dead or dying."  (Id.)  Dr. Garcia did not correct New's statement, nor did he refer plaintiff to an ENT.  Plaintiff filed grievances, appealed the denials, and eventually received a recommendation from the Director of Correctional Healthcare for referral to an ENT.  As of May 18, 2020, an ENT had not evaluated him, and he had stopped receiving any care for his symptoms.

He further alleges that Wexford's goal is to "delay, delay, delay" referrals to specialists.  (Id.)  Wexford automatically denies referrals initially, forcing inmates to go through the grievance process, and does not act until the grievance process compels action.  By that time, many inmates in need of referrals have transferred or made parole.

On June 25, 2020, after completing an initial screening of plaintiff's complaint, Magistrate Judge Aboulhosn granted

plaintiff's application to proceed without prepayment of fees and ordered the Clerk to serve process on defendants.

On July 21, 2020, defendants filed this motion.  They argue that the facts alleged do not rise to the level of deliberate indifference; all the facts describe is a difference of opinion between patient and doctor regarding what the appropriate "course of treatment" is.  (ECF No. 14, at 5.)  Further, Dr. Garcia and Ms. Morgan argue that qualified immunity precludes plaintiff's claim against them because the right that plaintiff alleges was not firmly established as part of the Eighth Amendment.  Finally, Wexford argues that the only fact alleging a custom or practice is an off-hand statement by a low-level employee of Wexford, which is insufficient to state a Monell claim.

Plaintiff obtained counsel and opposed the motion.[2] Plaintiff argues that his claim is about more than simply the denial of a referral:  It is about the refusal to provide him with needed medical care.  He argues that Dr. Garcia knew the symptoms were getting worse, but did not complete any diagnostic

---

[2] Plaintiff attached declarations to his opposition, which the court will not consider in deciding this motion to dismiss.  See Jackson v. Sagal, 370 F. Supp. 3d 592, 598 (D. Md. 2019) (explaining that courts have complete discretion whether to accept outside material and convert motions to dismiss into summary judgement motions or to not consider outside material).

tests to uncover the source of the problem.  Further, he argues
that even if his claim were simply about the refusal to refer,
he would state a claim.  He argues that refusal to provide the
evaluation that Dr. Garcia knew he needed has resulted in severe
pain and possibly permanent hearing loss.

Plaintiff further argues that neither Dr. Garcia nor Ms.
Morgan is entitled to qualified immunity because the right – to
receive medical treatment for a serious medical condition – "has
been clearly established for decades."  (ECF No. 21, at 6.)
Finally, plaintiff argues that the statement from New is a
sufficient fact to ground a claim that Wexford has a *de facto*
policy of wrongfully withholding referrals to specialists.

On reply, defendants stress their argument that this case
is indistinguishable from a previous case in this district, and
there, the complaint was dismissed.  Defendants urge the court
to reach the same result here.  They also reiterate that the
statement by New is insufficient to show the requisite custom or
policy because it is only a single instance of the alleged
conduct, and New was a "low-level employee without policymaking
authority."  (ECF No. 24, at 5.)  Defendants also argue that
plaintiff's allegation of such a policy is inconsistent with
plaintiff's allegation that Ms. Morgan said she would confer
with Dr. Garcia about a potential referral.

4

## II.  **Legal Standard**

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (citations and internal quotation marks omitted).  A Rule 12(b)(6) defense asserts that even if all the factual allegations in a complaint are true, they remain insufficient to establish a cause of action.  This court is also mindful that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Jones v. Bock, 549 U.S. 199, 215 (2007).

Related to this, Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading . . . contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009) (citing Fed. R. Civ. P. 8(a)(2)).  The purpose of Rule 8(a)(2) is to ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  A plaintiff must allege "'enough facts to state a claim to relief that is plausible on

its face'" and "'raise a right to relief above the speculative level.'" Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The United States Supreme Court has maintained that "[w]hile a complaint . . . does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and internal quotation marks omitted).  The court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Courts must also take care to avoid confusing the veracity or even accuracy underlying the allegations that a plaintiff has leveled against a defendant with the allegations' likelihood of success. While "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-36 (3d ed. 2004), "assum[ing]" of course "that all the allegations in the complaint are true (even if doubtful in fact)," Twombly, 550 U.S. at 555, it is also the case that "Rule 12(b)(6) does not

countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989).  Therefore, courts must allow a well-pleaded complaint to proceed even if it is obvious "that a recovery is very remote and unlikely." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

"A document filed pro se is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted).

## III. **Discussion**

Plaintiff adequately states a claim for deliberate indifference, but his claim falls within a gray area of the law; accordingly, Dr. Garcia and Ms. Morgan are entitled to qualified immunity.  As to Wexford, plaintiff adequately states a <u>Monell</u> claim.

### a. **Dr. Garcia and Ms. Morgan**

#### 1. **Sufficient Facts to State a Claim**

Defendants argue that plaintiff fails to state a claim because the facts he alleges amount to no more than non-actionable disagreement over a course of treatment.  Because plaintiff has sufficiently alleged exceptional circumstances that would make such a claim actionable, and because it is

unclear at this stage whether the denial of the referral was actually the product of medical judgment, the court disagrees.

A claim under § 1983 requires an independent violation of federal law.  See 42 U.S.C. 1983; Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000).  When that federal law is the Eighth Amendment, and the context is prison medical care, the facts alleged must rise to the level of "deliberate indifference" to the inmate's serious medical needs.  Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).  The objective and subjective elements of deliberate indifference are, respectively, (1) the existence of a serious medical condition afflicting an inmate; and (2) a state actor's knowledge of, and disregard for, "an excessive risk to" the inmate's "safety or health" arising from that medical condition.  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  If there is no deliberate indifference, there is no "cruel and unusual punishment" under the Eighth Amendment.  See id.[3]

"Deliberate indifference is a high standard."  DePaola v. Clarke, 394 F. Supp. 3d 573, 594 (W.D. Va. 2019); see also Jackson, 775 F.3d at 178 ("exacting"); Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) ("a high bar"); Grayson v. Peed,

---

[3] Because defendants do not appear to dispute the objective element, the court will assume that it is met for purposes of this motion.

195 F.3d 692, 695 (4th Cir. 1999) ("very high").  The question is not whether the state actor should have known of the risk, but whether the state actor "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson, 775 F.3d at 178.  Knowledge of facts from which an inference of excessive risk could be drawn is not enough; the state actor must actually draw such an inference. Farmer, 511 U.S. 825 at 837.  This is because the Eighth Amendment protects against punishments, not conditions. Id. at 838.  Accordingly, unless the state actor actually knows he is putting an inmate's safety or health at an excessive risk, and chooses to do so anyway, his ultimately harmful action or inaction, "while no cause for commendation," is not "the infliction of punishment." Id. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." Formica, 739 F. App'x at 754 (emphasis in original).  Courts should be mindful of the different interests that tort law and the Eighth Amendment serve. Farmer, 511 U.S. at 838; see also Petties v. Carter, 836 F.3d 722, 736 (7th Cir. 2016) (Easterbrook, J., dissenting) (courts should not "constitutionalize tort law").

The default rule is that claims based on insufficient diagnostic efforts are not within the ambit of the Eighth Amendment because the scope of diagnostic efforts is a medical judgment.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976).  In Estelle, the plaintiff injured his back when a heavy bale of cotton fell on him.  Id. at 99.  Two months later, he was still in too much pain to work, even when threatened with disciplinary action.  Id. at 100-01.  In reversing the Fifth Circuit's determination that the insufficient diagnostic efforts violated the Eighth Amendment, Justice Thurgood Marshall explained the Court's reasoning as follows:

> The doctors diagnosed [Respondent's] injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers.  Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.  The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."  But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.  The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand.  That portion of the judgment of the District Court should have been affirmed.

Id. at 107-08 (citations omitted).

At oral argument at the Supreme Court, Mr. Gamble's counsel had argued that when a case involves "refusal to conduct a subsequent diagnosis, and if necessary change the treatment, you are not really talking about just diagreement [sic] with the diagnosis, you are talking about a refusal to conduct a subsequent diagnosis in the face of persisting symptoms." Tr. of Oral Arg. 28. The Supreme Court declined the invitation to understand insufficient diagnostic efforts as distinct from medical judgments and made clear that disagreement with such medical judgments is the domain of tort law, not civil rights law. Id. at 107.

The Estelle rule excluding claims that doctors should have chosen different or additional diagnostic methods or treatment plans from the domain of the Eighth Amendment remains good law. See Jackson, 775 F.3d at 178 ("[W]e agree with the district court that Jackson's claim against Lightsey is essentially a '[d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care,' and we consistently have found such disagreements to fall short of showing deliberate indifference.") (quoting Wright v. Collins, 766 F.2d 841, 849 (4th Cir.1985)); Goodman v. Runion, 676 F. App'x 156, 160 (4th Cir. 2017) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (quoting Estelle, 429 U.S. at 106); Jackson v.

11

Sampson, 536 F. App'x 356, 357-58 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested, and the subsequent course of monitoring he received, amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."); Goodman v. Johnson, 524 F. App'x 887, 889 (4th Cir. 2013).

Courts have not understood this rule as absolute, however. For example, in the Seventh Circuit, "A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011). In the Tenth Circuit, this kind of a claim is "actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006). And, most importantly for the analysis here, the Fourth Circuit has recognized that there is an exception to the general rule for "exceptional circumstances." Wright, 766 F.2d at 849 ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.") (emphasis added).

There are not bright lines for determining what constitutes exceptional circumstances. However, the Fourth Circuit's

opinion in De'lonta v. Johnson, 708 F.3d 520 (4th Cir. 2013)
provides some insight.  There, allegations that prison staff
willfully refused to let an inmate be evaluated for sex
reassignment surgery in the face of the inmate's repeated
attempts to self-castrate were sufficient to state a claim.  Id.
at 524-26.  A hypothetical illustration that the court used
there is also instructive:

> By analogy, imagine that prison officials prescribe a
> painkiller to an inmate who has suffered a serious
> injury from a fall, but that the inmate's symptoms,
> despite the medication, persist to the point that he
> now, by all objective measure, requires evaluation for
> surgery.  Would prison officials then be free to deny
> him consideration for surgery, immunized from
> constitutional suit by the fact they were giving him a
> painkiller?  We think not.

Id. at 526 (4th Cir. 2013)

Also, as a more general matter, we know that the provision
of some treatment does not preclude an Eighth Amendment
violation.  Id.  Rather, the treatment must be "constitutionally
adequate."  Id.

The unpublished decision of Formica is also helpful.  From
that case we learn that when a dentist recommends that an inmate
be referred to an outside specialist, a nurse who "personally
witnessed the degeneration of the" tooth that needs treatment
can violate the Eighth Amendment by willfully refusing to
schedule the appointment.  Formica, 739 F. App'x at 758.

There is persuasive authority from this district that when a prisoner needs to see a specialist about his diagnosed skin cancer, it may constitute an Eighth Amendment violation to refuse to let the prisoner see the specialist. Lynch v. Wexford Health Sources, No. 2:13-CV-01470, 2016 WL 2944688, at *8 (S.D.W. Va. May 20, 2016).

In their opening brief and reply, defendants emphasize the purported similarity of this case to Michael v. Gordon, No. 2:17-CV-04314, 2018 WL 8621208, at *8 (S.D.W. Va. June 15, 2018), report and recommendation adopted, No. 2:17-CV-04314, 2019 WL 1198736 (S.D.W. Va. Mar. 14, 2019). They say that this case is Michael "all over again." (ECF No. 24, at 3.) The court must disagree. In Michael, the plaintiff was involved in a minor car accident. Id. at 9. His claim was based on a five-day delay in seeing a doctor (although he had been X-rayed after only three days). Id. The X-rays were negative for fractures. Id. The doctor told him to expect to be sore for several months. Id. He complained of back and neck pain, and he was given pain relievers. Id. He thought that he should get an MRI, CT-scan, or referral to a specialist. Id. at 10. There is no indication from the case that Michael had anything beyond soft-tissue injuries. See id. at 9-10.

Thus, in Michael, it does not appear that the plaintiff could even meet the objective part of the test for deliberate

14

indifference.  There was no indication that the plaintiff in
Michael was in danger of permanent disability, such as the
alleged permanent hearing loss at issue here.  A back injury is
exactly what was at issue in Estelle.  There, the Fifth Circuit
had stated that the plaintiff should have been X-rayed.  The
Supreme Court disagreed.  Thus, given the result in Estelle, the
result in Michael makes perfect sense.  Michael represents a
case similar to, and significantly weaker than, Estelle.  There
were no exceptional circumstances to make the claim actionable.

In stressing the similarity to Michael, defendants overlook
other persuasive authority from this district.  In Lynch, the
plaintiff alleged deliberate indifference to skin cancer,
curvature of the spine, and bone spurs.  2016 WL 2944688, at *1-
2.  Specifically, he alleged that the defendants had wrongfully
"refused to follow instructions from outside specialists
regarding ongoing treatment procedures, refused to allow follow
up visits with area specialists, and refused diagnostic tests
and treatment that Plaintiff alleges was necessary."  Id. at *8.
One doctor allegedly "revoked [the plaintiff's] shave slip and
required him to shave areas of his face that had been afflicted
by prior and reoccurring skin cancer, causing [him] 'unnecessary
harm, pain, and self-mutilation.'"  Id. (citation to record
omitted).  The court noted that this revocation was the opposite
of the care that the plaintiff needed.  Id.  The court described

15

the failure to treat the plaintiff – including by referring him – was "near total" and allowed the plaintiff's claim to proceed. Id.

In so doing, the court acknowledged the rule that doctor-patient disagreements generally are not actionable:

> It may very well turn out to be the case that such claims, "on closer inspection, amount to nothing more than a prisoner's disagreement with his diagnosis or prescribed treatment;" however, it remains the case at initial screening that "prison doctors violate the Eighth Amendment if they decline to provide the level of care they deem medically necessary or fail to adequately address a prisoner's complaints that the care he is receiving is not effective."

Id. (quoting Goodman v. Johnson, 524 Fed. Appx. at 889).

Lynch was a stronger case than this one. The plaintiff there had diagnoses of serious conditions. He also had instructions from a specialist that the defendants allegedly ignored. See Petties, 836 F.3d at 729 ("[I]t can be challenging to draw a line between an acceptable difference of opinion (especially because even admitted medical malpractice does not automatically give rise to a constitutional violation), and an action that reflects sub-minimal competence and crosses the threshold into deliberate indifference. One hint of such a departure is when a doctor refuses to take instructions from a specialist.") (emphasis added). And one defendant allegedly made the callous decision to revoke the plaintiff's shave slip.

While this case probably falls somewhere between Michael and Lynch, it is closer to Lynch.  The allegations are exceptional enough to state a claim:  Plaintiff had alarming symptoms; they got worse, not better, with the treatment; permanent hearing loss was potentially on the line; and months allegedly went by with no additional efforts to find out what was wrong with him.  Construing plaintiff's allegations liberally, it appears that exceptional circumstances may cause Estelle's general rule not to apply.  Moreover, it is unclear at this stage that the decision to withhold referral to a specialist was actually the product of Dr. Garcia's medical judgment.

As to the claim against Ms. Morgan, the following passage from Lynch is instructive:

> For similar reasons, the Court finds sufficient Plaintiff's claims against Defendant Anna Kincaid, a former "Health Services Administrator for Wexford," who Plaintiff appears to allege was responsible for administrative denials of Plaintiff's requests for medical treatment.  Although Plaintiff does not allege that Ms. Kincaid treated him directly, he does allege that he made Ms. Kincaid aware of his serious medical needs through multiple grievances. Nonetheless, Plaintiff alleges, Ms. Kincaid failed to review Plaintiff's medical file or offer any other assistance to remedy the problem and "made the deliberate intentional decision to flatly refuse any assistance to Plaintiff."

2016 WL 2944688, at *9 (citation omitted).  The situation here is similar.  Defendants characterize plaintiff's claim against

Ms. Morgan as a failure to compel Dr. Garcia to make the referral.  This assumes that only Dr. Garcia could make the referral and that Ms. Morgan had no authority to advance the referral process.  Plaintiff's grievance, initially submitted to the Unit Manager, was referred to Ms. Morgan as the appropriate individual to address it.

At this stage, plaintiff gets the benefit of a reasonable inference that Morgan had some meaningful degree of influence over the situation, even if not ultimate authority to make a referral or to otherwise provide plaintiff with the evaluation and treatment that he alleges he needed.

Therefore, the court finds that plaintiff alleges sufficient facts to state a claim under § 1983 against Dr. Garcia and Ms. Morgan.

### b. Qualified Immunity

Although plaintiff sufficiently alleges a constitutional violation, the doctrine of qualified immunity protects Dr. Garcia and Ms. Morgan from liability because they did not have fair notice that their alleged conduct, in these particular circumstances, would amount to cruel and unusual punishment under the Eighth Amendment.

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the

commencement of discovery." Adams v. Ferguson, 884 F.3d 219, 226-27 (4th Cir. 2018). Courts must frame the right at issue "with specificity," and not "at a high level of generality." City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018)). There need not be an exact match in existing precedent. Kisela, 138 S. Ct. at 1152. But "[t]ime and again, the Supreme Court has reiterated that for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Adams, 884 F.3d at 230 (quoting Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015). Unless the law is clear enough to put every reasonable official on notice that certain conduct is illegal, such conduct does not violate a clearly established right. Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

"The dispositive question is whether the violative nature of particular conduct is clearly established." Id. at 12 (citations and internal quotation marks omitted). Courts are to "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" Adams, 884 F.3d at 227 (quoting Mullenix, 136 S.Ct. at 308). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the

19

law.'"  Mullenix, 577 U.S. at 12 (quoting Malley v. Briggs, 475
U.S. 335, 341 (1986)).

>    In Emmons, the Supreme Court stated,

>    The Court of Appeals should have asked whether clearly
>    established law prohibited the officers from stopping
>    and taking down a man in these circumstances.
>    Instead, the Court of Appeals defined the clearly
>    established right at a high level of generality by
>    saying only that the 'right to be free of excessive
>    force' was clearly established.  With the right
>    defined at that high level of generality, the Court of
>    Appeals then denied qualified immunity to the officers
>    and remanded the case for trial.

139 S. Ct. at 503.  This "formulation of the clearly established
right was far too general."  Id.

     Here, defendants frame the constitutional right narrowly:
"a particular preferred course of treatment," in the form of, "a
referral to an outside ENT specialist."  (ECF No. 14, at 10.)
Plaintiff, by contrast, defines the right broadly:  "adequate
treatment for serious medical needs."  (ECF No. 21, at 6.)
Plaintiff states that this right "has been clearly established
for decades."  (Id.)  Accordingly, plaintiff contends that
plaintiffs were on notice that providing no treatment or
inadequate treatment would violate the Eighth Amendment.  The
court understands the right at issue to be the right to receive
medical care in the form of referral for an alternative
diagnosis under the particular circumstances alleged.

Courts are free to "skip ahead to the question whether the law clearly established that the [defendant's] conduct was unlawful in the circumstances of the case." DePaola v. Clarke, 394 F. Supp. 3d 573, 590 (W.D. Va. 2019) (quoting Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018)). Whether a right is clearly established is a question of law. Ray v. Roane, 948 F.3d 222, 228 (4th Cir. 2020). In deciding it, this court is to consider the Supreme Court, Fourth Circuit, and Supreme Court of Appeals of West Virginia precedent first. See id. at 229. If those sources do not provide the answer, this court is authorized to consider whether "general constitutional principles or a consensus of persuasive authority" had established the right. See id. Accordingly, "neither a state trial court nor a federal district court opinion is likely to be found to provide controlling authority" under the second prong of the qualified immunity analysis. Garrett v. Clarke, No. 3:19CV835, 2021 WL 622434, at *4 n.4 (E.D. Va. Feb. 17, 2021).

In essence, plaintiff's claim is that defendants provided plainly inadequate evaluation of his alarming symptoms, including progressively worsening hearing loss. And because the evaluation was inadequate, so was the treatment. Plaintiff does not allege that he was diagnosed with a serious condition; the problem was that he did not have a proper diagnosis. The course of treatment was not helping him, and the general practitioner

21

had reached the limits of his diagnostic abilities.  The seriousness of his condition was based solely on plaintiff's description of his symptoms.  He had not sustained an injury.  His symptoms were not obvious.  The question is whether the state of the law, as it stood at the time, had put defendants on adequate notice that, in such a situation, willful failure to evaluate a prisoner more aggressively (such as by referral to a specialist) is a violation of the Eighth Amendment.  It had not.

As discussed in the previous section, the court must evaluate this case against the backdrop of Estelle.  Accordingly, there must be exceptional circumstances for the claim to be cognizable.  Fourth Circuit precedent offers some guidance.  There is conflicting persuasive authority in this district, with this case appearing to fall somewhere between cases coming out different ways.  The tie goes to the plaintiff.  The allegations appear to describe exceptional circumstances such that the willful failure to refer for diagnosis may be actionable.

But because it is a close call whether the allegations support an Eighth Amendment violation, it follows that the law was not clearly established.  The allegations describe deliberate indifference at its outermost boundaries.  Plaintiff does not show otherwise in opposition to this motion.  Plaintiff

frames the right broadly, citing Estelle, but does not attempt to distinguish this case from Estelle itself.

Plaintiff also cites Scinto v. Stansberry, where the court "define[d] the right in question as the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs."  841 F.3d 219, 236 (4th Cir. 2016) (emphasis added).  It is true that in this general context, the Fourth Circuit has tended to apply a broad definition of the right.  See Formica v. Aylor, 739 F. App'x 745, 758 n.8 (4th Cir. 2018) (citing Scinto to dismiss a nurse's claim of qualified immunity out of hand); Iko v. Shreve, 535 F.3d 225, 243 (4th Cir. 2008) ("Neither can the officers succeed in showing that this right was not clearly established. The right to adequate medical care had already been carefully circumscribed in the caselaw, with its objective and subjective components spelled out to ensure that only the most wanton indifference goes punished.")

Even assuming that the articulation of the right in Scinto is the correct one for this case (which seems doubtful), the key word is "known."  Here, as in Estelle, we are talking about unknown medical needs, and insufficient efforts to determine what they were.  Fourth Circuit precedent had not made it clear to every reasonable official in the circumstances at issue that failure to take additional diagnostic steps would amount to

cruel and unusual punishment.  This court is to consider whether the law was clearly established in light of the particular circumstances alleged.  Having done so, the court finds that the law was not clearly established.

### c. Wexford

The Supreme Court has held that, in § 1983 actions, municipalities are not liable solely by virtue of respondeat superior, but are liable for the results of their unlawful policies or customs.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 694 (1978).  In Powell v. Shopco Laurel Co., the Fourth Circuit made the limits of Monell applicable to private corporations acting under color of state law.  678 F.2d 504, 506 (4th Cir. 1982).  Thus, to state a claim against a private corporation under § 1983, a plaintiff must plausibly allege that a "policy or custom" of the defendant caused of the unlawful conduct at issue.  Monell, 436 U.S. at 694; Insco v. Wexford Health Sources, Inc., No. 2:19-CV-00612, 2020 WL 2770419, at *5 (S.D.W. Va. May 28, 2020) ("[A] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.").

The policy, custom, or practice must be "persistent and widespread" such that policymakers knew or should have known of it.  Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014).  And the policymakers' failure to correct

it must be the result of deliberate indifference.  Id.  The
policy must be "fairly attributable" to the corporation.  Jordan
by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

"An official policy often refers to 'formal rules or
understandings . . . that are intended to, and do, establish
fixed plans of action to be followed under similar circumstances
consistently and over time,' and must be contrasted with
'episodic exercises of discretion in the operational details of
government.'"  Semple v. City of Moundsville, 195 F.3d 708, 712
(4th Cir. 1999) (citations omitted). "Outside of such formal
decisionmaking channels, a municipal custom may arise if a
practice is so 'persistent and widespread' and 'so permanent and
well settled as to constitute a 'custom or usage' with the force
of law.'"  Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

Although proving a policy or custom under Monell is quite
difficult, pleading one is less so.  Owens, 767 F.3d at 403.  A
plaintiff need not "detail the facts underlying his claims, or .
. . plead the multiple incidents of constitutional violations
that may be necessary at later stages to establish the existence
of an official policy or custom and causation."  Jordan, 15 F.3d
at 339.  In this context, as in others, "[t]he recitation of
facts need not be particularly detailed, and the chance of
success need not be particularly high."  Owens, 767 F.3d at 403.
Hearsay will not suffice to defeat summary judgment.  Pyles v.

Fahim, 771 F.3d 403, 412 (7th Cir. 2014).  But the pleading stage is not as demanding, and the court must assume the truth of plaintiff's allegations.

Plaintiff's Monell allegations are essentially two:  (1) Nurse New stated, in the presence of Dr. Garcia, that Wexford was withholding referrals to specialists for all but life-threatening illnesses; (2) as of the time plaintiff filed his complaint, he had been seeking a referral unsuccessfully for over six months despite alarming symptoms.  Defendants argue that this is not enough.  The court disagrees.

It does not matter that New was a low-level employee. Plaintiff is not saying that New came up with this policy, only that his statement reveals its existence.  While only one allegation, it is a fairly powerful one.  If it is true that New said it, as the court must assume, then it is plausible that Wexford had a policy of wrongfully withholding referrals to inmates.

This fact, together with the currently unexplained delay in plaintiff's case, is sufficient to state a claim under Monell.[4] Defendants arguments to the contrary, such as that New's comment

---

[4] Though the point is largely semantic, plaintiff's claim of a de facto policy, however, is perhaps better understood as a claim of "custom."  Lollie v. Johnson, No. 14-CV-4784 SRN/HB, 2015 WL 3407931, at *4 (D. Minn. May 27, 2015) ("Rather than flatly rejecting theories of de facto policies, courts have assessed these theories under a Monell "custom" analysis.").

"is devoid of any context to indicate that the [he] has any actual knowledge of whether such a policy exists, or is merely speculating," (ECF No. 24, at 5-6.), are arguments for the summary judgment stage.

The court finds that plaintiff states a <u>Monell</u> claim against Wexford.

**IV.  Conclusion**

For the foregoing reasons, the motion to dismiss is granted in part.  The court **GRANTS** the motion as to Dr. Garcia and Ms. Morgan and **DENIES** the motion as to Wexford.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 15th day of March, 2021.

ENTER:

David A. Faber
Senior United States District Judge

27