```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT BLUEFIELD
```

TYLER HOWARD GRAENING,

    Plaintiff,

v.                                  CIVIL ACTION NO. 1:20-00400

WEXFORD HEALTH SOURCES, INC.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the motion of defendant Wexford Health Sources, Inc. ("Wexford") for summary judgment. (ECF No. 56.) For the reasons that follow, the motion is **GRANTED**.

### I. Background

In this § 1983 action, plaintiff alleges deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution. He says that he was deprived of medical care to diagnose and treat "pain in his ear, ringing, vertigo, and hearing loss." (ECF No. 3, at 3.) More specifically, he says that Wexford wrongfully delayed a referral to an ear, nose, and throat specialist ("ENT"). Plaintiff sued multiple defendants, but after plaintiff's voluntary dismissals and the court's dismissal of two individual defendants, the only defendant remaining in this action is

Wexford, a corporation that provided inmate healthcare to prisoners at a facility where plaintiff was incarcerated.

At the motion to dismiss stage, the court found that although plaintiff sufficiently stated a claim for deliberate indifference, the doctor and health administrator defendants were entitled to qualified immunity. The court allowed plaintiff's Monell claim against Wexford to proceed, reasoning as follows:

> Although proving a policy or custom under Monell is quite difficult, pleading one is less so. Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 403 (4th Cir. 2014). A plaintiff need not "detail the facts underlying his claims, or . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan, 15 F.3d at 339. In this context, as in others, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Owens, 767 F.3d at 403. Hearsay will not suffice to defeat summary judgment. Pyles v. Fahim, 771 F.3d 403, 412 (7th Cir. 2014). But the pleading stage is not as demanding, and the court must assume the truth of plaintiff's allegations.
>
> Plaintiff's Monell allegations are essentially two: (1) Nurse New stated, in the presence of Dr. Garcia, that Wexford was withholding referrals to specialists for all but life-threatening illnesses; (2) as of the time plaintiff filed his complaint, he had been seeking a referral unsuccessfully for over six months despite alarming symptoms. Defendants argue that this is not enough. The court disagrees.
>
> It does not matter that New was a low-level employee. Plaintiff is not saying that New came up with this policy, only that his statement reveals its existence. While only one allegation, it is a fairly powerful

> one. If it is true that New said it, as the court must assume, then it is plausible that Wexford had a policy of wrongfully withholding referrals to inmates.
>
> This fact, together with the currently unexplained delay in plaintiff's case, is sufficient to state a claim under Monell.

(ECF No. 30, at 25-27.)

The court further noted that questions surrounding whether Nurse New ("New") had knowledge of such a policy, or was merely speculating, were for the summary judgment stage. (Id. at 27.)

We are now at the summary judgment stage, discovery is closed, and the record on plaintiff's side remains virtually unchanged. It does not appear that plaintiff took the deposition of New or engaged in any formal discovery to obtain evidence of Wexford's alleged unconstitutional policy or custom. Instead, plaintiff relies on his affidavit, a fellow prisoner's affidavit regarding an unrelated injury, his own deposition, and his verified complaint. He suggests that these items are sufficient to support a reasonable inference of Monell liability.

By contrast, Wexford has obtained evidence that New's statement does not indicate the existence of a policy or custom of unconstitutionally delaying referrals or of deliberate indifference by Wexford to such a policy or custom. Wexford has also obtained evidence (in the form of an expert opinion) that,

3

as a more preliminary matter, there was no violation of the standard of care here (which would necessarily mean there was no Eighth Amendment violation) when the medical staff did not refer plaintiff to an ENT.

In sum, we arrive at the summary judgment stage with insufficient evidence to sustain a reasonable inference that (1) Wexford had a Monell policy or custom that resulted in a delay in plaintiff's referral to an ENT; or (2) that plaintiff received medical care so deficient as to violate the Eighth Amendment. To the contrary, there is unrebutted evidence that (1) a state (i.e., non-Wexford) policy urged the rescheduling or postponement of non-emergency outside healthcare trips due to the COVID-19 pandemic; and (2) there was no violation of the medical standard of care here.

II. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

"A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-

movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citations omitted). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020).

"The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. Because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," one way to meet this burden it to show that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23.

Once there is a proper challenge to the sufficiency of the nonmoving party's evidence on an essential element, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]o survive the motion for summary judgment, [the nonmoving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material

5

facts exist that give rise to a genuine issue." Wai Man Tom, 980 F.3d at 1037 (citation omitted).

As the Supreme Court has explained,

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51. In other words, summary judgment is proper when it is apparent from the record that "no reasonable jury could find for the nonmoving party." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993).

Disbelief in the nonmoving party's ability to succeed on the merits, however, is not a sufficient reason to grant summary judgment. See Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022). Also, at the summary judgment stage, courts are not to make credibility determinations or weigh the evidence. Id. at 255.

The evidence is to be viewed in the light most favorable to the nonmoving party, and all reasonable inferences are to be drawn in that party's favor. Verisign, Inc. v. XYZ.COM LLC, 848 F.3d 292, 298 (4th Cir. 2017). That said, "[t]he requirement to

6

construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [courts] to accept cherry-picked snippets of testimony divorced from their context." Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 763 (4th Cir. 2021).

## III. Discussion

The sole remaining claim in this case is that Wexford, a corporation providing healthcare services to West Virginia prisoners, is liable under 42 U.S.C. § 1983[1] on the theory that it had a "de facto policy of denying requests for outside treatment." (ECF No. 3, at 3.) Plaintiff alleges that Wexford would automatically deny specialist referrals until forced to relent in the face of the grievance process. (See id.) Thus, plaintiff's § 1983 theory of liability is pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).[2]

---

[1] This statute imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

[2] "A Monell claim asserts § 1983 liability against a municipal or county government. In Monell, the Court held that municipalities may be liable under § 1983 for unconstitutional or illegal policies." Randall v. Prince George's Cty., 302 F.3d 188, 194 n.4 (4th Cir. 2002). For purposes of § 1983 liability, "a private medical corporation acting under color of state law is treated like a municipal entity." Southard v. Wexford Med.,

7

"The substantive requirements for proof of municipal liability [under § 1983] are stringent." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). Proving a Monell claim is difficult because it requires tracing the alleged violation of federal law up to the policymaking arm of the municipality or corporation. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Spell v. McDaniel, 824 F.2d 1380, 1387, 1390 (4th Cir. 1987). Here, plaintiff has not shown that there is a triable issue of fact that the alleged deprivation of a federal right can be traced in this way. More fundamentally, plaintiff has failed to show that there is a triable issue of fact as to whether he sustained a deprivation of a federal (Eighth Amendment) right at all.

In § 1983 actions, municipalities are liable only for the results of their unlawful policies or customs, not merely by virtue of respondeat superior. Monell, 436 U.S. at 691, 694. As the Fourth Circuit Court of Appeals has explained,

> Although municipalities, unlike public officials, cannot claim immunity from suit, the Supreme Court has expressly cabined their liability: under Monell, a municipality is liable only for its *own* illegal acts. Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. Only if a municipality subscribes to a custom, policy, or

---

No. 17-CV-00839-JPG, 2021 WL 1062214, at *5 (S.D. Ill. Mar. 18, 2021).

8

    practice can it be said to have committed an independent act, the *sine qua non* of Monell liability.

Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014) (citations omitted).

    In Powell v. Shopco Laurel Co., the Fourth Circuit made the limits of Monell applicable to private corporations acting under color of state law. 678 F.2d 504, 506 (4th Cir. 1982); see also Insco v. Wexford Health Sources, Inc., No. 2:19-CV-00612, 2020 WL 2770419, at *5 (S.D.W. Va. May 28, 2020) ("[A] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.").

    The most basic requirement for a successful Monell claim is to connect the alleged violation of a federal right to an official policy or custom of the defendant. See Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). An express policy issued by the corporation's policymakers is the most straightforward source of such a policy or custom, but there are three other possible sources: (1) a decision of a policymaking official; (2) a corporate omission manifesting deliberate indifference to federal rights; and (3) a practice that "is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" See Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter, 164 F.3d at 217); see also

9

Connick v. Thompson, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.").

A Monell "custom" must be based on a practice that is "so widespread as to have the force of law." Brown, 520 U.S. at 404. A plaintiff can trace an alleged "custom" up to the defendant's policymaking officials by showing that the "duration and frequency of the practice[] warrants a finding of either actual or constructive knowledge" on the part of those officials. Spell, 824 F.2d at 1387. Constructive knowledge of an improper practice is not to be inferred lightly: "[It] may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." See id. (emphasis added).

A Monell plaintiff must not only prove the existence of a policy or custom, but also must prove causation between the policy or custom and the deprivation of a federal right. Brown, 520 U.S. at 404 (requiring "a direct causal link between the municipal action and the deprivation of federal rights"); Haughie v. Wexford Health Sources, No. CV ELH-18-3963, 2020 WL 1158568, at *15 (D. Md. Mar. 9, 2020) ("A viable § 1983 *Monell* claim consists of two components: (1) the municipality had an

10

unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.).

When the policy "directly commands or authorizes constitutional violations" (as in <u>Monell</u> itself), causation is easily shown. <u>Spell</u>, 824 F.2d at 1387; <u>see also</u> <u>Brown</u>, 520 U.S. at 404 ("Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward."). Causation becomes significantly more difficult when the alleged policy is not improper on its face. <u>Id.</u> "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." <u>Brown</u>, 520 U.S. at 405.

Here, plaintiff's theory is that Wexford had a "de facto" policy of delaying necessary referrals to specialists. The court understands plaintiff's claim to be that Wexford had an unconstitutional custom that caused a violation of the Eighth Amendment. Plaintiff's essential task at the summary judgment stage was to show that a reasonable jury could infer (1) that

Wexford adopted or condoned the existence an unwritten rule that (2) caused a violation of his Eighth Amendment rights.

To prove the adoption of an unwritten rule, plaintiff would need to show that the corporation took some deliberate action toward such adoption.  To prove that Wexford condoned an unwritten rule, plaintiff would need to show Wexford's deliberate indifference to a practice of not referring inmates even when doing so would violate the Eighth Amendment.  Plaintiff could do so by showing that the practice was so widespread and the constitutional violations so likely to occur that Wexford effectively condoned the constitutional violations.  Plaintiff has failed to show that there is a triable issue of fact as to whether a policy or custom that Wexford adopted or condoned was behind his alleged Eighth Amendment violation.  On this record, no reasonable jury could infer the existence of such a policy or custom.

In arguing to the contrary, plaintiff points to three items:  (1) New's comment that the corporation was not referring inmates unless they were dead or dying; (2) the delays associated with the referral in this case; and (3) the affidavit of a fellow prisoner stating that he, too, was denied a referral by Wexford.  Individually or collectively, this is not nearly enough for a jury reasonably to conclude that Wexford is liable under a Monell theory.

12

As to New's comment, the court assumes that it is admissible as one of a party opponent under Federal Rule of Evidence 801, and further assumes that New in fact said it and that it is in fact true. Read for all it is worth, however, this statement does not create a triable issue of fact concerning the existence of a corporate policy of automatically delaying medically necessary referrals. At most, it supports an inference that those who made referral decisions were not then granting them except in critical medical situations. But there is no evidence that the refusal to refer is traceable to Wexford policymakers. In discovery, plaintiff had an opportunity to tie the refusals to Wexford policymakers, and he failed to do so.

Neither can this statement sustain a finding that Wexford condoned a practice of automatic nonreferral. First, New's alleged suggestion that an inmate must be dead or dying is obviously at least somewhat hyperbolic. New could not have meant that Wexford was actually referring dead inmates to specialists. If a prerequisite for a referral was that the inmate needed to be dying, that would lead to inevitable Eighth Amendment violations, but to draw this inference, one would need to understand New's at least half-hyperbolic comment as half literal. The comment is no more than a scintilla of evidence of an unconstitutional custom.

Second, New's comment was that referrals were not then happening. (See ECF No. 3, at 3 ("Wexford Health is not approving any specialist appointments unless the inmate was dead or dying.").) Reading the comment as proof of a widespread, settled practice asks far too much of it. While it may support an inference of general unwillingness by Wexford staff to refer non-critically ill prisoners, it does very little to support an inference that the refusal to refer was widespread and flagrant enough to put Wexford on constructive notice of its existence. The comment is also insufficient to support the inference that Wexford was aware of a reluctance to refer severe enough to lead to inevitable Eighth Amendment violations.

As to the delayed referral and delay in carrying out the referral in this case, these facts also do very little to show the existence of a Monell policy or custom. First, the delays speak to only a single instance of a potential constitutional violation, which is insufficient as proof of a policy or custom. Spell, 824 F.2d at 1388 ("Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single violation charged."). On this record, it would be speculative to infer that the delays indicate the existence of a Monell policy or custom.

Wexford's delay in carrying out the referral is particularly unavailing. The delay in carrying out the referral

14

is a different kind of delay than the one based on New's statement (that referrals were not being approved), and it would again be speculative to infer that the delay was pursuant to a policy or custom. The undisputed evidence shows that plaintiff received a referral very soon after the grievance process resulted in a favorable recommendation for him. It also shows that during the entire period of delay between when plaintiff received the referral and when he saw an ENT specialist (1) the world was in the midst of the COVID-19 pandemic; and (2) the West Virginia Division of Corrections ("WVDCR") accordingly had a policy in place to restrict outside appointments as much as possible. (ECF No. 56-3. 56-4.)

Plaintiff attempts to create a dispute of fact by citing his deposition testimony, where he denied that anyone told him that the pandemic was the reason for the delay and where he stated that, instead, the explanation he received was that the referral was not approved. (ECF No. 58-3, at 2.) In reviewing this deposition testimony, it is unclear whether it related to the delay in receiving the referral or the delay in carrying out the referral. Regardless, assuming that plaintiff was told that the reason for either delay was a lack of approval, that does not refute the existence of the COVID-19 pandemic or the WVDCR policy.

15

In response to Wexford's assertion that the only policy uncovered in discovery is the WVDCR COVID-19 policy, plaintiff retorts that this explanation for the delay is "bogus" and that the WVDCR policy should have been asserted in Wexford's answer as an affirmative defense. But plaintiff offers no challenge to the existence of the policy, its non-Wexford source, or its validity. Plaintiff casts no more than a scintilla of doubt on the assertion that the delay in carrying out the referral was a result of the restrictions on movement due to the COVID-19 pandemic. In asking that the delays here speak for themselves, plaintiff would invite the trier of fact to assume blindly—not infer reasonably—that the delay resulted from a Monell policy or custom. It was incumbent upon plaintiff to discover evidence connecting the delay to such a policy or custom, and he failed to do so.

Finally, plaintiff points to the affidavit of a fellow prisoner regarding an unrelated failure to refer despite a severe staph infection on his pinky finger. This evidence fails to move the needle with any appreciable magnitude. It is not at all clear that this unrelated instance would amount to deliberate indifference under the Eighth Amendment, rather than mere disagreement over a course of treatment under Estelle v. Gamble, 429 U.S. 97 (1976). At most, this is evidence of one other instance where Wexford did not make a specialist referral

16

despite a course of treatment that was seemingly not resolving a medical issue.  One other example of a possible case of a wrongfully withheld referral does virtually nothing to support plaintiff's Monell claim.  In other words, it presents essentially no support for an inference that Wexford condoned an unwritten rule that referrals should always be withheld unless a prisoner is dying.

In addition to plaintiff's failure to show a triable issue of fact as to the existence of a Monell policy or custom, there is a more fundamental failure:  Plaintiff has failed to show a triable issue of fact as to an underlying violation of the Eighth Amendment.  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).  The Eighth Amendment demands a reasonable response to a serious medical risk, not a preferred course of treatment.  See Hixson v. Moran, 1 F.4th 297, 302-03 (4th Cir. 2021).

In Hixon, a prisoner brought a deliberate indifference claim based on his not receiving the insulin that his expert witness was prepared to testify that he needed.  Hixson v. Moran, 1 F.4th 297, 300 (4th Cir. 2021).  In lieu of prescribing insulin, the doctor in that case placed the prisoner on a diabetic diet and ordered blood sugar monitoring.  Id.  The

17

court held that because the plaintiff "failed to forecast evidence showing that [the doctor's] alternative treatment plan was 'so grossly incompetent' as to permit a finding of deliberate indifference, the district court properly granted summary judgment." Id. at 303 (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990)).

In this case, the court denied the motion to dismiss because, under the "exceptional circumstances" standard (which eludes a precise definition), it appeared plausible that the refusal to refer plaintiff to an ENT violated the Eighth Amendment. Now, after the close of discovery, the record indicates otherwise. No reasonable jury could find an Eighth Amendment violation on this record.

The question of whether there was an Eighth Amendment violation here depends on whether further diagnostic efforts (referral to an ENT) were required. Because plaintiff's allegedly serious medical condition was not at all an obvious one, plaintiff's claim implicates medical standards beyond the ken of laypersons. Thus, expert opinion is required concerning the standard of care to help the jury understand whether there was even a breach of the standard, let alone deliberate indifference to a serious medical need.

Wexford has submitted an expert opinion by Dr. Richard A. Capito ("Dr. Capito") that there was not a violation of the

18

medical standard of care. (ECF No. 56-5.) Mere medical malpractice is an insufficient basis for a § 1983 claim based on an alleged violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 107 (1976). If there was not even a violation of the standard of care here, there was necessarily no deliberate indifference.

Plaintiff submitted no expert opinion to rebut Dr. Capito's opinion (or in support of plaintiff's case in chief). Plaintiff did not take Dr. Capito's deposition. In short, the opinion that there was no violation of the standard of care is unrebutted. Accordingly, and because plaintiff has submitted no evidence that the medical staff were deliberately indifferent (or even that they committed malpractice), there is no triable issue of fact as to whether there was an Eighth Amendment violation here.

## IV. Conclusion

In the Monell context, the Fourth Circuit Court of Appeals has noted the importance of summary judgment in "ferret[ing] out before trial unmeritorious suits against municipalities." See Jordan, 15 F.3d at 340. This case proves that point well. There is no need for a trial where plaintiff can only speculate as to the existence of a Monell policy or custom and ask a jury to substitute its own medical judgment for that of the medical staff involved here without the benefit of expert testimony to

19

explain the standard of care. For the foregoing reasons, Wexford's motion for summary judgment (ECF No. 56) is **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 8th day of June, 2022.

ENTER:

David A. Faber
Senior United States District Judge